UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODNEY NATHANIEL, JR., WILLIE
WILLIAMSON, JR.,
WARFIELD MOORE, COREY     HON. GEORGE CARAM STEEH
TURNER, CHIQUITA TURNER,     Case No. 19-CV-11154
and LUCILLE TURNER,

    Plaintiffs,
v.

HERTZ LOCATION EDITION
CORPORATION, and
THE HERTZ CORPORATION,

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (ECF No. 3) AND CLOSING THE CASE

This is a race discrimination case. Plaintiffs Rodney Nathaniel, Jr., Willie Williamson, Jr., Warfield Moore, Corey Turner, Chiquita Turner, and Lucille Turner ("Plaintiffs"), all African American, are suing Hertz Local Edition Corporation and The Hertz Corporation[1] ("Hertz") for a violation of the Elliot Larsen Civil Rights Act ("ELCRA"), MCL 37.2102, *et seq*.

---

[1] Hertz Transporting, Inc., Hertz Vehicles LLC, and Hertz General Interest LLC were dismissed from the case by prior order of the court. (ECF No. 4).

- 1 -

Plaintiffs allege that Hertz has a discriminatory policy that prohibits customers in primarily African American cities and the surrounding areas from using debit cards to rent vehicles, and that the policy prevented Plaintiffs from renting a vehicle. Plaintiffs say the policy is discriminatory because African Americans are more likely to exclusively use debit cards, resulting in a disparate impact on the protected class's ability to rent vehicles. Plaintiffs also claim disparate treatment.

Plaintiffs request injunctive relief to eliminate the policy, costs, and attorneys' fees. Additionally, Plaintiffs intend to certify a class of "thousands" of others similarly situated. (ECF No. 1-2, PageID.18).

Hertz filed a motion to dismiss, or in the alternative, for a more definite statement. (ECF No. 3). The Court granted the motion for a more definite statement and requested Plaintiffs submit supplemental information before deciding the motion to dismiss. (ECF No. 16). The parties had oral argument on February 4, 2020. Now before the Court is Hertz's motion to dismiss. (ECF No. 3). For the reasons that follow, the motion is **GRANTED**.

## BACKGROUND

Plaintiffs theory of discrimination hinges on the locations of the individual Hertz stores that do not accept debit cards. The complaint states that Hertz first closed all rental locations in the City of Detroit, which is

79.1% African American. (ECF No. 1-2, PageID.14). Detroit residents then started to travel to adjoining suburbs close to the City to rent vehicles using debit cards. *Id.* Plaintiffs say Hertz responded by implementing a no debit card policy[2] at these locations close to the City. (*Id.* at PageID.15). Since African Americans are more likely to use debit cards, Plaintiffs say, the policy prohibits Plaintiffs and others similarly situated from renting a vehicle. (ECF No. 9, PageID.283).

Specifically, Plaintiffs say that the new policy refuses debit cards at 16 locations within approximately 10- 30 miles of Detroit. Ferndale is the closest participating Hertz location, located 10.1 miles from Detroit (and 6.87% African American); Canton is the farthest, at 31 miles from Detroit (and 11.3% African American). (ECF No. 18). Hertz also refuses debit cards in Flint, which is 53.9% African American, but accepts them in areas outside of Flint. (ECF No. 9, PageID.270). On the other hand, Plaintiffs say, a customer could use a debit card to rent a vehicle in Ann Arbor, roughly 46 miles from Detroit, and only 7% African American. (*Id.*

---

[2] The policy has certain exceptions that Plaintiffs say do not apply to them. The exceptions relate to whether the rental was due to an accident and thus covered by an insurance company or whether the person was a member of the "Hertz Club." Plaintiffs say "The African Americans identified in this complaint almost exclusively rent vehicles for transportation outside of insurance rentals due to an accident, and do not qualify to be a member of the Hertz Club precisely because of their credit worthiness issue that resulted in them possessing only debit cards." *Id.*

at PageID.269). Additionally, Plaintiffs say the policy has been instituted nation-wide in areas with concentrated African American populations. (ECF No. 9).

Hertz responds that Plaintiffs do not have standing and have failed to state a legal claim of discrimination. (ECF No. 3).

## **STANDARD OF LAW**

Rule 12(b)(6) allows the Court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. Under the Supreme Court's articulation of the Rule 12(b)(6) standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007), the court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. Even though the complaint need not contain "detailed" factual allegations, its " 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true.' " *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

## **STANDING**

In order to have standing, a plaintiff must show that he has suffered an injury in fact, *i.e.,* a concrete and particularized, actual or imminent invasion of a legally protected interest. *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992).

Hertz relies on *MOSES Inc. v. SEMCOG*, 716 N.W.2d 278 (Mich. Ct. App. 2006), arguing that Plaintiffs do not have statutory standing under the ELCRA. In *MOSES,* plaintiffs challenged the adequacy of the City of Detroit's representation in SEMCOG, a multipurpose regional planning organization. The court found plaintiffs did not have standing because neither the individuals nor the organization could show an injury in fact to themselves, and the plaintiffs were not the real party in interest, which was the City of Detroit. In other words, plaintiffs were trying to represent the interests of the entire City of Detroit, and the court found that representation could not be established because plaintiffs were not "adversely affected . . . in a manner different from the manner in which the interests of the public at large [were] affected." *Id.*

Hertz says Plaintiffs similarly fail to show an injury because they have not suffered an "adverse effect" different from the public at large; every customer who walks into the select Hertz locations is prohibited from using

a debit card. (ECF No. 3, PageID.239). Plaintiffs respond that while the policy applies to the public at large, it only has a prohibitive effect on Plaintiffs' ability to rent vehicles. (ECF No. 9).

The Court agrees with Plaintiffs. *MOSES* dealt with individual plaintiffs bringing a legal claim on behalf of a City, the court finding they lacked representative standing. Here, Plaintiffs allege a unique injury to themselves and those similarly situated, making them the proper party in interest and proper representatives of the proposed class. The allegation that Plaintiffs cannot rent Hertz vehicles because the policy affects African Americans more harshly than other customers is a distinct injury sufficient to confer standing under *Lujan, supra.*

## **ANALYSIS**

I. Disparate Impact

Hertz argues that the public accommodations section of the ELCRA does not allow a claim for disparate impact. No Michigan court has decided this issue, making it a matter of first impression. Thus, the court compares ELCRA to similar federal civil rights statutes to address the question of whether the public accommodations section of ELCRA allows a claim for disparate impact.

a. <u>Title II of the Civil Rights Act</u>

ELCRA's public accommodations section is similar to the language in Title II of the Civil Rights Act. *See Nuckols v. Grace Centers of Hope*, 2007 WL 4454298, at *1 (E.D. Mich. Dec. 14, 2007) (comparing Title II of the Civil Rights Act to the ELCRA). The ELCRA states:

> Except where permitted by law, a person shall not: (a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status.

§ 37.2302. The Civil Rights Act states:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

42 U.S.C.A. § 2000a. Federal law does not provide a definite answer, either; neither the Supreme Court nor the Sixth Circuit have determined whether Title II of the Civil Rights Act allows such a claim, or if a plaintiff must prove intentional discrimination.

A handful of federal courts have dealt with the issue. Some have declined to determine if Title II provides a cause of action. *See, e.g., Arguello v. Conoco, Inc.,* 207 F.3d 803, 813 (5th Cir. 2000); *Jefferson v.*

*City of Fremont*, 73 F.Supp.3d 1133, 1145–46 (N.D. Cal. 2014). Other federal courts have decided that Title II requires intentional discrimination.

In *Akiyama v. U.S. Judo Inc.*, 181 F. Supp. 2d 1179, 1185 (W.D. Wash. 2002), the court held Title II does not provide for a claim of disparate impact. The court stated the primary purpose of Title II was:

> "to remove the humiliation, frustration, and embarrassment that a person must surely feel when he is told that he is unacceptable as a member of the public because of a protected characteristic. [S]uch emotions and the overall insult to human dignity with which Congress was so clearly concerned arise in the context of intentional conduct, such as segregation and/or the denial of admission because of a patron's race or religion."

Such a purpose, the court held, was not consistent with a claim of disparate impact.

In *Hardie v. Nat'l Collegiate Athletic Ass'n.*, 97 F. Supp. 3d 1163 (S.D. Cal. 2015), the court found Title II contained no language indicative of a disparate impact claim. Rather, "in contrast, the operative language in Title II—"discrimination," "segregation," and "on the ground of"— is far closer to statutes that do not recognize disparate impact; indeed the Supreme Court has indicated that the term "discrimination," without more, does not include

disparate impact. *Id.* at 1168[3] (quoting *Smith v. City of Jackson, Miss.,* 544 U.S. 228 at 236). *See also LaRoche v. Denny's, Inc.*, 62 F.Supp.2d 1366, 1370 (S.D. Fla. 1999) (explaining that "the clear language of Title II itself speaks in terms of disparate treatment.").

Plaintiffs do not cite any cases where a court has concluded Title II allows for a disparate impact claim. The Court has located two. In *Robinson v. Power Pizza, Inc.*, 993 F. Supp. 1462, 1464 (M.D. Fla. 1998), the court allowed a claim for disparate impact in a place of public accommodation to proceed because the defendant argued that was the applicable test, and plaintiff did not disagree ("Based on the allegations of the Complaint, Defendant argued during the hearing that the specific test to be used is that of disparate impact."). The court did not engage in further analysis.

In *Olzman v. Lake Hills Swim Club, Inc.,* 495 F.2d 1333 (2d Cir. 1974), the Second Circuit considered a facially neutral guest policy at a swim club that had the effect of excluding African American guests, implying that a disparate impact claim could be made under Title II. There, the policy-making body had made racially discriminatory remarks about

---

[3] On appeal, the Ninth Circuit declined to decide the issue, stating instead, "we express no view today on whether Title II encompasses disparate impact claims. Even if Title II authorized such claims, Hardie has not met his burden[.]" *Hardie v. Nat'l Collegiate Athletic Ass'n*, 876 F.3d 312, 319 (9th Cir. 2017).

African American guests and indicated an intent to ensure they were not allowed to return. The court stated, "in addition to the possible discriminatory effect involved in the guest rule change is the possibility of a discriminatory intent in adopting a facially neutral role." *Id.* at 1341. Further, there was no allegation that any non- African American guests had been kept out of the swim club. The rule which was "facially neutral" *only* applied to African American guests, which is unlike the disparate impact claim advanced here.

Plaintiffs make several comparisons to other federal statutes, suggesting that because those statutes provide or may provide a claim of disparate impact, so does the public accommodations section of the ELCRA.

b. <u>The Age Discrimination in Employment Act ("ADEA")</u>

Plaintiffs point out that the ELCRA is often compared to the ADEA, which provides a claim of disparate impact. 29 U.S.C.A. § 621 *et seq.* It is well settled that disparate impact claims apply to employment related discriminatory practices. *See Smith v. City of Jackson, Miss.*, 544 U.S. 228 (2005) (comparing Title VII to the ADEA and determining both statutes contain language that indicate Congress' intent to provide a claim of disparate impact). Accordingly, the Sixth Circuit has compared the ADEA

only to the employment section of ELCRA, not the public accommodations section. *See Geiger v. Tower Auto.*, 579 F.3d 614, 626 (6th Cir. 2009); *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 523 (6th Cir. 2007).

   c. <u>Title II of the Americans with Disabilities Act ("ADA")</u>

Plaintiffs argue that Title II of the ADA, which prohibits disability discrimination by public entities, allows a claim of disparate impact, citing *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 905 (6th Cir. 2004). 42 U.S.C.A. § 12132. While the case states that Title II of the ADA provides for "more than intentional discrimination," the Sixth Circuit was not willing to label it disparate impact ("It is not clear that this characterization is apt."). Further, the Second Circuit has held that under Title II of the ADA, "a claim of discrimination based on a failure to reasonably to accommodate is distinct from a claim of discrimination based on disparate impact." *Henrietta D. v. Bloomberg,* 331 F.3d 261, 276–77 (2d Cir.2003). *See also Lee v. City of Los Angeles,* 250 F.3d 668, 690–91 (9th Cir.2001).

   d. <u>The Rehabilitation Act</u>

Plaintiffs urge the Court to compare the ELCRA's public accommodations section to § 504 of the Rehabilitation Act, stating "it is unclear whether a disparate impact cause of action is available under the

Rehabilitation Act in the Sixth Circuit…[b]ut a U.S. Supreme Court decision seems to implicitly recognize that [it is]," citing *Alexander v. Choate*, 469 U.S. 287 (1985). (ECF No. 9). 29 U.S.C.A. § 794.

A recent Sixth Circuit case clarifies the issue to Plaintiffs' detriment. In *Doe v. BlueCross BlueShield of Tennessee, Inc.*, 926 F.3d 235, 241 (6th Cir. 2019), the Court "resolve[d] what *Choate* did not and conclude[d] that § 504 does not prohibit disparate-impact discrimination," basing the analysis on a comparison to Title VI, which does not provide for a claim of disparate impact. The Court noted that "when the Supreme Court has found that a statute prohibits disparate-impact discrimination, it has relied on language like "otherwise adversely affect" or "otherwise make unavailable," which refers to the consequences of an action rather than the actor's intent. That language is missing from § 504, just as it is missing from Title VI." *Id.* at 242 (internal citations omitted).

    e. <u>Title III of the ADA</u>

On the other hand, statutes that do provide for a claim of disparate impact tend to indicate as much in the text. For example, Title III of the ADA, the public accommodations section, specifically prohibits "utiliz[ing] standards or criteria or methods of administration ... that have *the effect* of discriminating on the basis of disability" or "the imposition or application of

eligibility criteria that *screen out or tend to screen out* an individual with a disability." 42 U.S.C. §§ 12182(b)(1)(D), (b)(2)(A)(i) (emphasis added). S*ee Indep. Living Res. v. Or. Arena Corp.,* 1 F.Supp.2d 1159, 1169 (D.Or.1998) (finding disparate impact claims cognizable under Title III of the ADA). Similarly, Title VII includes a provision entitled "[b]urden of proof in disparate impact cases," explicitly recognizing the claim. 42 U.S.C. § 2000e–2(k).

f. <u>Proof of Adverse Impact</u>

The Court finds it unnecessary to determine the viability of a disparate impact claim under Title II of the ELCRA because, even if a disparate impact claim exists, Plaintiffs do not meet their pleading burden.

In order to demonstrate a disparate impact, Plaintiffs must show a facially neutral policy "falls more harshly on one group than another." *Smith v. City of Jackson, Miss.,* 544 U.S. 228 (2005). "A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507 at 2523 (2015). The causal link between the policy and disparity must be "robust." *Id.*

Plaintiffs' complaint offers only a conclusory allegation of disparate impact. The complaint states, "Defendants' policy had the effect of disparate discrimination against African Americans because the debit card policy affected a disproportionate African American population who were the predominant debit card holders," but offers no statistics that establish the actual impact of the policy on African Americans' ability to rent vehicles. (ECF No.1-2). In their reply, Plaintiffs offer additional evidence. Though the Court would ordinarily require the complaint be amended, that would not remedy Plaintiffs' deficiencies.

Plaintiffs say the policy disproportionately impacts African Americans due to the higher number of African American households that use debit cards, providing that "nationally, 13.3% of black households use a debit card, while it is 7.2% for white households." (ECF No. 9, PageID.290).

Setting aside whether that statistical difference would be legally sufficient, Plaintiffs are missing a causal connection between the higher use of debit cards in African American homes and how Hertz's policy has caused a disparate impact in the protected class's ability to rent Hertz vehicles. *See Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 994-95 (1988) ("the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of

applicants for jobs or promotions because of their membership in a protected group."); *Howe v. City of Akron*, 723 F.3d 651 (6th Cir. 2013).

During oral argument the Court asked Plaintiffs what facts they intend to discover that would support such a connection. Plaintiffs responded that there is no need for additional evidence—the allegation that African Americans use debit cards at a higher rate than whites is enough. Thus, Plaintiffs have not identified any facts at this stage, nor do they allege they will in the future, that would create a "robust" casual connection between Hertz's policy and the impact on African Americans. *See Texas Dep't of Hous. & Cmty. Affairs, supra*.

II. <u>Disparate Treatment</u>

In order to establish a *prima facie* case of discrimination based on disparate treatment, a plaintiff must show how she was treated differently than similarly situated members of a non-protected class. *Brintley v. St. Mary Mercy Hosp.*, 904 F. Supp. 2d 699, 728 (E.D. Mich. 2012). Disparate treatment requires a finding of intent to discriminate. *Gieger v. Tower Automotive,* 579 F.3d 614, 626 (6th Cir.2009).

Plaintiffs do not make sufficient factual allegations of intent in the complaint. They point to the locations that have banned debit cards, stating "it is clear that Detroit and Flint are the only predominantly black

cities in the state of Michigan. Hertz only refuses to accept debit cards in those two areas. Nowhere else. Not in Ann Arbor. Not in Lansing. Not in Grand Rapids. All majority white cities." (ECF No. 9, PageID.284). However, according to Plaintiffs' statistics, Hertz locations in primarily white areas like Royal Oak, Troy, Rochester Hills and Plymouth, all with under 5% African American populations, do not accept debit cards (ECF No. 18), illuminating that the policy impacts more white people than African American people.  Additionally, a resident of Rochester Hills or Troy, for example, would have to drive farther than a resident of Detroit to visit a Hertz location in Ann Arbor, Lansing, or Grand Rapids if she did not own a credit card.

Plaintiffs seem to acknowledge this flaw, saying that the Court should "easily see the implausibility of an argument that refusal to accept debit cards will equally impact the good residents of the cities of Birmingham or Bloomfield Hills, both within 25 miles of Detroit and easily the richest communities in the state of Michigan and ranked nationwide." (ECF No. 9, PageID.286).  This, however, does not allege that Plaintiffs are treated differently than a non-protected class.  It is a reiteration of the disparate impact argument.

Additionally, Plaintiffs seem to conflate racial discrimination with wealth discrimination. At oral argument, Plaintiffs said that African American residents living in locations outside the City of Detroit or Flint, both majority low-income cities, are more likely to have a credit card and therefore not be affected by the policy. In other words, Plaintiffs argument is that the policy affects an African American living in Detroit more harshly than it affects an African American living in a more affluent city.

Though Plaintiffs do not plead it in the complaint, they are making an Equal Protection claim based on wealth. First, the Public Accommodations Section of the ELCA only prohibits discrimination based on religion, race, color, national origin, age, sex, or marital status—not wealth. *See* MCLA § 37.2302. Next, Plaintiffs have no cognizable Equal Protection Claim against Hertz, a private actor. *See* U.S. Const. Amend. XIV. Therefore, to the extent Plaintiffs argue they have been treated differently because of wealth, their argument fails.

Finally, Plaintiffs ask the Court to demand Hertz give a reason for the policy. Only after a plaintiff has established a *prima facie* case does the burden of production shift to the defendant to articulate some legitimate, nondiscriminatory reason for the policy. *Brintley*, 904 F. Supp. at 727. Since

Plaintiffs have not established a *prima facie* case, Hertz is not required to defend the policy.

## **CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss (ECF No. 3) is **GRANTED**, and the case is **DISMISSED**.

**IT IS SO ORDERED**.

Dated: February 20, 2020

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on February 20, 2020, by electronic and/or ordinary mail.

s/Brianna Suave
Deputy Clerk